SCHOOLHOUSE CORPORATION *v.* WILLIAM H. WOOD, JR., CONSERVATOR (ESTATE OF HILDA RANKIN OLYPHANT) ET AL. (15599)

Landau, Schaller and Hennessy, Js.

Argued October 28—officially released October 28, 1996[1]

---

[1] October 28, 1996, the date that this decision was released in open court, is the operative date for all substantive and procedural purposes.

*John H. Burns*, for the appellant (plaintiff).

*Robert L. Wyld*, with whom, on the brief, were *Edward F. Scully, Sheila A. Huddleston, Stephanie M. Gitlin* and *Patrick E. Scully*, for William H. Wood, Jr., executor of the estate of Hilda Rankin Olyphant.

LANDAU, J. The plaintiff appeals from the judgment of the Superior Court dismissing its appeal from the Probate Court's approval of the sale of certain real property. The plaintiff claims that the Superior Court improperly granted the defendants'[2] motions to dismiss.

We first set out the facts and procedural history of the case. Hilda Rankin Olyphant and her daughter, the defendant Denise Case, each owned an undivided one-half interest in twenty-six acres of property on Mountain Spring Road in Farmington. Olyphant became incapacitated and a conservator, the defendant William H. Wood, Jr., was appointed. Wood and Case determined that the property should be sold to pay for Olyphant's care and they listed the property for sale at $385,000. They rejected the plaintiff's offer of $320,000 for the property. On October 27, 1994, the plaintiff prepared and signed a noncontingent offer to purchase the property for the listing price. On that same day, the defendant Karen Wand submitted an offer for the property of

---

[2] The defendants are William H. Wood, Jr., conservator of the estate of Hilda Rankin Olyphant, Denise O. Case and Karen Wand.

$350,000. A contract dated October 27, 1994, was signed by Case, Wood as conservator and Wand at a purchase price of $350,000.

The defendants filed an application for approval of the sale with the Probate Court on November 15, 1994, along with a letter indicating that the plaintiff had made a subsequent offer in the amount of $385,000. The Probate Court permitted the plaintiff to participate in the proceedings but did not formally consider the plaintiff's offer. The Probate Court approved the sale by decree on January 25, 1995, and on February 25 it authorized the plaintiff to file an appeal of its decision to the Superior Court.[3]

On July 21, 1995, Olyphant died. Thereafter, the defendants Wand and Wood filed separate motions to dismiss the action in the Superior Court arguing that upon the death of the ward the conservatorship terminated, the ward's interest in the property passed to Case under the terms of her will, and the appeal by the plaintiff from the Probate Court's decree was moot. The plaintiff argued that although the death of the ward terminated the conservatorship, the Probate Court's decree remained in effect and title to the property had not passed under the will to Case; therefore, the issues in the appeal remained justiciable.

On December 19, 1995, the Superior Court dismissed the plaintiff's appeal to that court on the ground that the appeal was moot. It found, inter alia, that the plaintiff had no written contract with the conservator for the purchase of the property, the Probate Court had not approved such a sale to the plaintiff, there was no longer a living ward whose interests the Probate Court

---

[3] The defendants first moved, separately, to dismiss the plaintiff's appeal claiming it was not aggrieved by the decree of the Probate Court and that it did not have standing to appeal the decision. These motions were denied by the Superior Court on August 25, 1995.

would have a duty to protect, and there no longer existed a conservatorship or a conservator to sell the property.[4]

The plaintiff filed an appeal in this court on January 9, 1996. The plaintiff's brief was filed on February 22, 1996, Wand filed her brief on March 22 and Wood filed his brief as conservator on March 25, 1996. The appeal was marked ready for hearing for October 28, 1996. After the briefs were filed, the plaintiff filed a motion to substitute in the Superior Court, requesting that the executor of the estate of Olyphant be substituted in place of the conservator. The conservator filed an objection arguing that the Superior Court no longer had jurisdiction to entertain the motion since the underlying action had been dismissed as moot and Practice Book § 4033 required the motion to be filed with this court. The Superior Court granted the motion to substitute on July 15, 1996. The defendants filed timely motions for review in this court. On October 23, 1996, review and relief, vacating the order to substitute, were granted. On October 24, 1996, the plaintiff filed a motion to substitute in this court, requesting the substitution of William H. Wood, Jr., executor, in lieu of William H. Wood, Jr., conservator.

As a threshold matter, we must first rule on the motion to substitute. In doing so, we must adhere to certain well recognized rules of law. "A cause . . . of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person. . . . If a party defendant dies, the plaintiff, within one year after receiving written notification of the defendant's death, may apply to the court in which the action is

---

[4] Even though the Superior Court dismissed the appeal as moot, we have jurisdiction to determine whether that court had jurisdiction. See *Gagnon v. Planning Commission*, 24 Conn. App. 413, 418, 588 A.2d 1385 (1991), aff'd, 222 Conn. 294, 608 A.2d 1181 (1992).

pending for an order to substitute the decedent's executor or administrator in the place of the decedent, and upon due service and return of the order, the action may proceed. . . . The provisions of this section shall not apply: (1) To any cause . . . of action or to any civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto . . . ." General Statutes § 52-599. "[T]his statute gives the plaintiff an absolute right to have the representative of a deceased defendant cited in within one year after the defendant's death, and thereafter it is within the power of the court to order him cited in 'if good cause is shown for the delay.' " *Worden* v. *Francis*, 170 Conn. 186, 188, 365 A.2d 1205 (1976), quoting *Dorsey* v. *Honeyman*, 141 Conn. 397, 400, 107 A.2d 260 (1954).

Practice Book § 4033 provides a procedure by which a plaintiff may apply to substitute as required by General Statutes § 52-599. "Any change in the parties to an action pending an appeal shall be made in the court in which the appeal is pending. . . ." Practice Book § 4033. Upon Olyphant's death, the plaintiff had two options: it could have filed a timely motion to substitute in the Superior Court when it filed its objection to the motions to dismiss, or it could have attempted to preserve the appeal by moving to substitute in this court within one year of Olyphant's death. It did neither. Instead the plaintiff waited until the year had nearly passed and then filed its motion in the wrong court.

The defendants provided the plaintiff an opportunity to cure its error when they challenged the Superior Court's jurisdiction on the basis of § 52-599 and Practice Book § 4033. At that time, the plaintiff could have withdrawn its motion in Superior Court and filed a motion to substitute in this court, still within the one year period set forth in § 52-599. Again it chose not to do so. The plaintiff now argues that this court should exer-

cise its discretion to allow its untimely motion because some unspecified ambiguity in the statute or rule and a conversation with a clerk of a court led it astray.

"Good cause" is defined as " 'a substantial reason amounting in law to a legal excuse for failing to perform an act required by law [and] [l]egally sufficient ground or reason.' Black's Law Dictionary (6th Ed. 1990); see also *Slifkin* v. *Condec Corp.*, 13 Conn. App. 538, 549, 538 A.2d 231 (1988)." *Roberto* v. *Honeywell, Inc.*, 33 Conn. App. 619, 626, 637 A.2d 405, cert. denied, 229 Conn. 909, 42 A.2d 1205 (1994). Thus, the scope of our discretion requires us to review the intent and the reasons given by the plaintiff for not moving to substitute the executor in place of the defendant conservator within the one year period set forth in § 52-599, and to determine if those reasons, particular to this case, amounted to good legal excuse.

The reasons offered by the plaintiff do not constitute good cause. A plaintiff's delay in seeking substitution would be excused for good cause "if all the parties interested were disabled by sickness, or lived remote from the domicile of the intestate, or had not heard of his death . . . ." *Johnson* v. *N. York & N. England R. R. Co.*, 56 Conn. 172, 175, 14 A. 773 (1888). A plaintiff's delay would also be excused when the plaintiff's administrator waited to seek substitution because the defendant's attorney had asked him not to file papers with the court, and had assured him that the debt at issue in the litigation would be paid. *Hatch* v. *Boucher*, 77 Conn. 347, 351, 59 A. 422 (1904). On the other hand, the Supreme Court affirmed a denial of a motion to substitute when it was apparent on the record that the plaintiff's delay resulted from simple neglect. *Worden* v. *Francis*, supra, 170 Conn. 188.

The plaintiff's offer of good cause does not comport with its meaning. Neglect, indifference, disregard of

plainly applicable statutory authority and self-created hardship do not constitute good cause to excuse the delay in filing the motion to substitute in the appropriate court. Because the plaintiff has failed to show good cause, its motion to substitute is denied.

Having denied the motion to substitute, we must dismiss the appeal because we cannot adjudicate an appeal in the absence of proper parties. See *Miko Bros., Inc.* v. *Lucas*, 169 Conn. 641, 363 A.2d 1044 (1975); *Barton* v. *New Haven*, 74 Conn. 729, 52 A. 403 (1902). The death of Olyphant did not defeat the right of the plaintiff to appeal from the Probate Court's approval of the sale of the property. But it was incumbent upon the plaintiff to take the necessary steps, pursuant to Practice Book § 4033, to revive the action on appeal. Because the plaintiff failed to take the necessary steps to preserve this appeal, its claim must fail.

The motion to substitute is denied and the appeal is dismissed.

In this opinion the other judges concurred.